March 4, 2013

Patricia **STROMENGER, Plaintiff,**

v.

**NOVARTIS PHARMACEUTICALS CORPORATION, Defendant.**

**No. 3:12–CV–00686–BR.**

United States District Court, D. Oregon.

April 22, 2013.

Jeffrey A. Bowersox, Lake Oswego, OR, Robert G. Germany, Pittman, Germany, Roberts & Welsh, LLP, Jackson, MS, Melanie H. Muhlstock, Parker Waichman Alonso LLP, Port Washington, NY, for Plaintiff.

Anne M. Talcott, Margaret A. Hoffmann, Ryan P. Boyle, Jeffrey D. Hern, Rebecca A. Lindemann, Schwabe Williamson & Wyatt, PC, Portland, OR, Katharine R. Latimer, Gregory Scott Chernack, John Kalas, Hollingsworth LLP, Washington, DC, for Defendant.

## OPINION AND ORDER

BROWN, District Judge.

This matter comes before the Court on Defendant Novartis Pharmaceuticals Corporation's Motion (# 65) to Find that Punitive Damages Are Unavailable and/or to Apply New Jersey Law to the Issue of Punitive Damages. For the reasons that follow, the Court concludes New Jersey law applies to the issue of punitive damages, and, as a result, punitive damages are unavailable in this matter. Accordingly, the Court **GRANTS** Defendant's Motion.

### *FACTUAL BACKGROUND*

Plaintiff Patricia Stromenger is an Oregon resident who was diagnosed with breast cancer in November 2001.

In January 2002 Plaintiff's cancer metastasized to her bones. Approximately one month later the Food and Drug Administration (FDA) approved the cancer drug Zometa as safe and effective to treat bone metastases from solid tumors.[1]

---

1. Zometa remains on the market today as an FDA-approved drug for that purpose.

In April 2002 Keith Lanier, M.D., Plaintiff's treating oncologist, began intravenously infusing Plaintiff with Zometa on a monthly basis in an effort to promote "reduction of cancer-related bone events, for accelerated bone healing and for possible survival prolongation."

In May 2002 after Plaintiff received a single dose of Zometa, Barry Taylor, D.D.S., extracted Plaintiff's root tip from tooth # 28. Plaintiff's tooth # 28 had been extracted previously from her right lower jaw.

In September 2002 Plaintiff was referred to Eric Dierks, D.D.S., an oral surgeon, for evaluation of Plaintiff's right lower jaw. Plaintiff advised Dr. Dierks that she had recently undergone a dental extraction and had developed an infection, which did not clear up after treatment with antibiotics. Plaintiff also reported her concern with ongoing swelling and drainage of her right mandible. Dr. Dierks diagnosed Plaintiff with acute osteomylitis of the jaw.

In August 2003 reports of osteonecrosis of the jaw (ONJ) in patients using bisphosphonates such as Zometa began to surface in medical literature. Also in August 2003 Defendant submitted a label change for Zometa to the FDA. Specifically, Defendant added the following paragraph to the "Adverse Reactions" section of the package insert:

Cases of osteonecrosis (primarily of the jaws) have been reported since market introduction. Osteonecrosis of the jaws has other well documented multiple risk factors. It is not possible to determine if these events are related to Zometa or other bisphosphonates, to concomitant drugs or other therapies (*e.g.,* chemotherapy, radiotherapy, corticosteroid), to patient's underlying disease, or to other co-morbid risk factors (*e.g.,* anemia, infection, pre-existing oral disease).

Def.'s Mem. in Support of Mot. (# 32) for Summ. J., Ex. 13 at 3. The labeling revision was made available to the public in December 2003.

In January 2004 Dr. Dierks noted Plaintiff was "dealing with a Zometa related osteonecrosis [of the jaw] that has become secondarily infected."

In February 2004 Defendant updated the Zometa label to provide:

Osteonecrosis of the jaw (ONJ) has been reported in patients with cancer receiving treatment regimens including bisphosphonates. Many of these patients were also receiving chemotherapy and corticosteroids. The majority of reported cases have been associated with dental procedures such as tooth extraction. Many had signs of local infection including osteomylitis.

A dental examination with appropriate preventive dentistry should be considered prior to treatment with bisphosphonates in patients with concomitant risk factors (*e.g.,* cancer, chemotherapy, corticosteroids, poor oral hygiene).

While on treatment, these patients should avoid invasive dental procedures if possible. For patients who develop ONJ while on bisphosphonate therapy, dental surgery may exacerbate the condition. For patients requiring dental procedures, there are no data available to suggest whether discontinuation of bisphosphonate treatment reduces the risk of ONJ. Clinical judgment of the treating physician should guide the management plan of each patient based on individual benefit/risk assessment.

Def.'s Mem. in Support of Mot. (# 32) for Summ. J., Ex. 16 at 12.

In March 2004 Dr. Lanier discontinued Plaintiff's monthly dose of Zometa based on Dr. Dierks's recommendation.

In April 2004 Plaintiff's gums had receded to the point that bone in her right mandible was exposed. In April 2004 Dr. Dierks removed the sequestrum (the piece of dead bone separated from the sound bone during the process of necrosis) in Plaintiff's jaw.

In May 2004 Dr. Dierks discussed with Plaintiff his "hope that she would go on to complete healing" because "the necrotic bone had been cleanly removed [in the April 2004 debridement]."

In June 2004 Plaintiff and Dr. Lanier discussed further bisphosphonate therapy. Dr. Lanier advised Plaintiff that she "needed to wait until she was completely healed and at that point [he] would reconsider reinstitution of bisphosphonate[s] ... on a quarterly basis."

In September 2004 Plaintiff and Dr. Dierks "discussed the fact that Zometa related osteonecrosis has no known cure and the timeline for its resolution is also unknown."

In November 2004 Plaintiff consulted Dr. Lanier and asked "[a] number of questions ... regarding bisphosphonate osteonecrosis."

In January 2006 Plaintiff saw a television commercial discussing actions filed by individuals who allegedly developed ONJ as a result of taking Zometa. Plaintiff called her family attorney about the Zometa issue because that "was the first time she suspected that there was something wrong with the drug that was connected to [her] condition." Plaintiff's family attorney referred her to attorneys more familiar with the Zometa litigation.

### PROCEDURAL BACKGROUND

On August 29, 2006, Plaintiff brought an action against Defendant in the Superior Court of New Jersey seeking compensatory and punitive damages on the ground that Zometa caused her to develop ONJ. Plaintiff brought claims for (1) defective design, (2) failure to warn, (3) breach of implied warranty, and (4) negligence, all in violation of N.J.S.A. 2A:58C-1 et seq. Plaintiff also brought a claim for violation of the New Jersey Consumer Fraud Act (NJCFA), N.J.S.A. 56:8-1 et seq., and a claim for punitive damages under the New Jersey Punitive Damages Act, N.J.S.A. 2A:15-5.9 and N.J.S.A. 2A:58C-1 et seq.

On October 13, 2006, Defendant removed the matter to the United States District Court for the District of New Jersey on the basis of federal-question jurisdiction.

At some point the Judicial Panel on Multidistrict Litigation (MDL) transferred the action under 28 U.S.C. § 1407 to the United States District Court for the Middle District of Tennessee.

Following discovery and briefing of dispositive motions in the MDL court, the MDL panel remanded the matter to the United States District Court for the District of New Jersey.

In April 2012 the United States District Court for the District of New Jersey transferred the matter to this Court.

On June 27, 2012, Defendant filed a Motion for Summary Judgment on the grounds that "[u]nder the statute of limitations operative in Oregon at the time of plaintiff's injury, Oregon Revised Statute § 30.905, plaintiff's product liability suit was untimely. Even under the amended version of Oregon Revised Statute § 30.905, effective January 1, 2004, her suit was untimely."

On October 22, 2012, 2012 WL 6649186, Magistrate Judge Dennis James Hubel issued Findings and Recommendation in which he recommended the Court deny Defendant's Motion for Summary Judgment. Defendant filed timely Objections.

On December 11, 2012, this matter was reassigned from Magistrate Judge Hubel to this Court.

On December 18, 2012, 2012 WL 6649585, this Court issued an Order adopting the Findings and Recommendation and denying Defendant's Motion for Summary Judgment.

On February 22, 2013, Defendant filed a Motion to Find that Punitive Damages are Unavailable and/or to Apply New Jersey Law to the Issue of Punitive Damages.

On April 9, 2013, the Court heard oral argument on Defendant's Motion and took the matter under advisement.

## *DISCUSSION*

### I. New Jersey's choice-of-law rules apply to resolve the conflicts-of-law issue.

Defendant contends the Court should apply New Jersey's choice-of-law rules to resolve the conflicts-of-law issue because this matter was originally filed in New Jersey. Defendant relies on *Ferens v. John Deere Co.*, 494 U.S. 516, 110 S.Ct. 1274, 108 L.Ed.2d 443 (1990), to support its contention.

Prior to *Ferens* the Supreme Court held when an action is transferred at the behest of the defendant under 28 U.S.C. § 1404, the transferee court must follow the choice-of-law rules of the transferor court. *Van Dusen v. Barrack*, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). In *Ferens* the Supreme Court extended that rule to transfers initiated by plaintiffs absent circumstances that do not apply in this case. *Ferens*, 494 U.S. at 523, 110 S.Ct. 1274. *See also Muldoon v. Tropitone Furniture Co.*, 1 F.3d 964, 966 (9th Cir.1993)(reversing district court's dismissal of the action applying California's statute of limitations on the ground that the matter was transferred from Illinois, and, therefore, the court should have applied

Illinois law to the choice-of-law analysis). Plaintiff does not dispute New Jersey's choice-of-law rules apply.

The Court concludes pursuant to *Ferens* that it must apply New Jersey conflicts-of-law rules to determine whether Oregon or New Jersey law governs the issue of the availability of punitive damages in this matter.

### II. New Jersey's conflicts-of-law rules.

The New Jersey Supreme Court has held that under New Jersey law "[t]he rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties." *P.V. ex rel. T.V. v. Camp Jaycee*, 197 N.J. 132, 140, 962 A.2d 453 (2008). Specifically, under New Jersey conflicts law "[i]n an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship ... to the occurrence and the parties, in which event the local law of the other state will be applied." *Id.* at 142, 962 A.2d 453 (quotation omitted).

The New Jersey Supreme Court set out New Jersey's conflicts analysis as follows:

> Procedurally, the first step is to determine whether an actual conflict exists. That is done by examining the substance of the potentially applicable laws to determine whether there is a distinction between them. If not, there is no choice-of-law issue to be resolved.

*Id.* at 144, 962 A.2d 453 (citations and quotations omitted). If an actual conflict exists in a personal-injury case, the law of the state in which the injury occurred is presumed to apply. *Id.* This presumption may be overcome, however, by a showing

that some other state has a "more significant relationship ... with the occurrence and the parties." *Id.* at 145, 962 A.2d 453.

New Jersey courts have made clear that when determining which law to apply to a case, "the law of one jurisdiction may apply to one issue in a matter and the law of a second jurisdiction to another," and "each issue must be analyzed separately." *Grossman v. Club Med Sales, Inc.*, 273 N.J.Super. 42, 51, 640 A.2d 1194 (1994). Thus, the law that governs the right to punitive damages may differ from the law that governs liability and the measure of compensatory damages.

## III. Analysis.

### A. The parties' positions.

Defendant contends there is not an actual conflict between Oregon and New Jersey law related to the availability of punitive damages. In fact, Defendant contends punitive damages are not available under either Oregon or New Jersey law. In her Response to Defendant's Motion, Plaintiff does not explicitly address whether there is a conflict between Oregon and New Jersey law related to punitive damage. Plaintiff, however, appears to imply there is not a conflict because her arguments are limited to her assertion that both Oregon and New Jersey law allow for punitive damages under circumstances such as those in this case.

The parties' arguments focus on provisions of Oregon and New Jersey statutes related to personal-injury actions against drug manufacturers. Specifically, New Jersey statute provides:

> Punitive damages shall not be awarded if a drug or device or food or food additive which caused the claimant's harm was subject to premarket approval or licensure by the federal Food and Drug Administration under the "Federal Food, Drug, and Cosmetic Act," 52 Stat. 1040, 21 U.S.C. § 301 *et seq.* or the

"Public Health Service Act," 58 Stat. 682, 42 U.S.C. § 201 *et seq.* and was approved or licensed; or is generally recognized as safe and effective pursuant to conditions established by the federal Food and Drug Administration and applicable regulations, including packaging and labeling regulations. However, where the product manufacturer knowingly withheld or misrepresented information required to be submitted under the agency's regulations, which information was material and relevant to the harm in question, punitive damages may be awarded.

N.J.S.A. § 2A:58C–5(c). Oregon statute provides:

> (1) Where a drug allegedly caused the plaintiff harm, the manufacturer of the drug shall not be liable for punitive damages if the drug product alleged to have caused the harm:
>
> > (a) Was manufactured and labeled in relevant and material respects in accordance with the terms of an approval or license issued by the federal Food and Drug Administration under the Federal Food, Drug and Cosmetic Act [FN1] or the Public Health Service Act; or
> >
> > (b) Is generally recognized as safe and effective pursuant to conditions established by the federal Food and Drug Administration and applicable regulations, including packaging and labeling regulations.
>
> (2) Subsection (1) of this section does not apply if the plaintiff proves, in accordance with the standard of proof set forth in ORS 30.925(1), that the defendant, either before or after making the drug available for public use, knowingly in violation of applicable federal Food and Drug Administration regulations withheld from or misrepresented to the agency or prescribing physician informa-

tion known to be material and relevant to the harm which the plaintiff allegedly suffered.

Or.Rev.Stat. § 30.927(1) and (2). Defendant contends these provisions· are functionally the same, and, therefore, there is not any conflict between Oregon and New Jersey law related to punitive damages. In her Response to Defendant's Motion, Plaintiff agrees the Oregon and New Jersey provisions are substantially the same and that there is not any conflict.

### B. Conflict between Oregon and New Jersey punitive-damages law.

At oral argument the Court pointed out that even though neither party raises the issue, it appears to the Court that there is a conflict between Oregon and New Jersey law related to punitive damages. Specifically, New Jersey has a cap on punitive damages that provides "[n]o defendant shall be liable for punitive damages in any action in an amount in excess of five times the liability of that defendant for compensatory damages or $350,000, whichever is greater." N.J.S.A. § 2A:15–5.14. Oregon does not have a cap on punitive damages. In addition, Oregon Revised Statute § 31.735 provides "[u]pon the entry of a verdict including an award of punitive damages, the Department of Justice becomes a judgment creditor" of 70% of the award (60% to the Criminal Injuries Compensation Account and 10% to the State Court Facilities and Security Account). New Jersey does not have a similar provision.

As the Court noted, at least two courts in cases involving this Defendant have concluded under facts similar to those at issue here that there was an actual conflict between New Jersey law and the law of another state because New Jersey has a cap on punitive damages and the other state did not. *See Hill v. Novartis Pharm. Corp.*, No. 1–06:–CV–00939–AWI–DLB, 2012 WL 967577 (E.D.Cal. Mar. 21,

2012), and *Zimmerman v. Novartis Pharm. Corp.*, 889 F.Supp.2d 757 (D.Md. 2012).

In *Hill* the plaintiff filed an action in California state court against Novartis asserting claims for strict product liability and negligence. Specifically, the plaintiff alleged:

Plaintiff CHRIS HILL is a citizen of the State of California.... A doctor prescribed h[er] Zometa. [She] took this medication from May or June of 2003 until October of 2004. As a result, [s]he suffered osteonecrosis of the jaw and was diagnosed in January of 2005. Defendant NOVARTIS PHARMACEUTICAL CORPORATION ('Novartis') is a Delaware corporation with its principal place of business located at One Health Plaza, East Hanover, New Jersey. During all times relevant hereto, NOVARTIS was in the business of manufacturing, marketing, distributing, promoting, testing, labeling and selling Zometa.

Taking Zometa increases the risk of osteonecrosis of the jaw, including the maxillar (bone).... Novartis made labeling changes in September and October of 2003, but these changes were inadequate to warn consumers and remain so to this date .... Plaintiff was taking Zometa in a reasonably foreseeable manner. Zometa reached [her] without a substantial change in condition. [She] was not aware of and reasonably could not have discovered the specific danger of severe osteonecrosis associated with the use of Zometa. To this day, NOVARTIS has not warned dentists across the nation of this danger or how to monitor and treat patients who took Zometa as prescribed. Therefore, the Plaintiff ... seeks imposition of punitive damages.

2012 WL 967577, at *1. The defendant removed the action to the United States

District Court for the Eastern District of California and filed a motion to apply New Jersey law rather than California law to Plaintiff's request for punitive damages. The court performed a conflicts-of-law analysis applying California law and concluded California law should apply to the plaintiff's request for punitive damages. *Id.*, at *11. Of particular relevance is the court's conclusion at step one of its analysis that the laws of California and New Jersey "differ materially" as to punitive damages, and, therefore, there was an actual conflict between those laws. The court noted:

> In California, punitive damages are available in any action for breach of a non-contractual obligation-including products liability actions ... "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice[.]" Cal. Civ.Code, § 3294, subd. (a). California statutes limit the amount of punitive damages that may be awarded for certain causes of action. *See, e.g.,* Cal. Civ.Code, § 3426.3, subd. (c)(limiting punitive damages for misappropriation of trade secrets to twice compensatory damages). *However, punitive damages awards in products liability actions are not statutorily limited,* although, as with any award of punitive damages, they are nonetheless subject to the Due Process Clause of the Fourteenth Amendment and the limitation they be sufficient to "deter future misconduct by the defendant" without being so disproportionate to the defendant's ability to pay that the award is excessive.
>
> [I]n contrast to California, New Jersey limits punitive damages *"in any action* in an amount in excess of five times the liability of the defendant for compensatory damages or $350,000, whichever is greater," N.J. Stat. Ann. § 2A:15–5.14, subd. (b)(emphasis added). In addition, the New Jersey Products Liability Act

(NJPLA, N.J. Stat. Ann. §§ 2A:58C–1 to –7) prohibits punitive damages where "a drug ... which caused the claimant's harm was subject to premarket approval or licensure by the federal Food and Drug Administration [FDA] ... and was approved or licensed," N.J. Stat. Ann. § 2A:58C–5, subd. (c).

*Id.*, at *2 (emphasis added; citations and quotations omitted). The court pointed out that

> California's punitive damages law advances the state's legitimate interests in punishing and deterring conduct harmful to its residents.... New Jersey also recognizes that the purposes of punitive damages are the deterrence of egregious misconduct and the punishment of the offender. However, unlike California, New Jersey places less emphasis on the deterrence aspect. Furthermore, by imposing numerical limits on the amount of punitive damages recoverable in all actions, New Jersey law reflects an additional interest in encouraging economic activity in the state and in protecting defendants from excessive liability.

*Id.*, at *3–4 (citations and quotations omitted). The court concluded California and New Jersey punitive-damages laws were in actual conflict:

> California, as the forum state, has an interest in applying its (relatively more generous) punitive damages law to punish and deter misconduct harmful to Plaintiff. New Jersey, on the other hand, has an interest in limiting the liability of businesses that operate within its borders. Thus, because Defendant's principal place of business is in New Jersey, New Jersey has an interest in applying its (relatively more restrictive) punitive damages law to limit liability to Defendant. If New Jersey's law were to apply, California's interest in punishment and deterrence would be im-

paired. If California's law were to apply, New Jersey's policy interests would be impaired.

*Id.*, at *4 (citations and quotations omitted). The court, therefore, concluded an "actual" conflict between New Jersey and California law existed.

Similarly, in *Zimmerman* the plaintiff, a Maryland resident, filed an action against Novartis in the United States District Court for the Middle District of Tennessee asserting claims for strict liability and negligence in connection with the manufacturing, distribution, promotion, testing, labeling, and selling of Zometa and another bisphosphonate drug, Aredia. 889 F.Supp.2d at 759. The plaintiff sought compensatory and punitive damages. The court transferred the matter to the United States District Court for the District of Maryland, and the defendant filed a motion to preclude punitive damages. Applying law of conflicts of Tennessee, which, like New Jersey, employs the "most significant relationship test," the court concluded New Jersey law governed the issue of punitive damages. *Id.* at 777. In reaching its ultimate decision, the court found there was an actual conflict between New Jersey and Maryland law as to punitive damages. Specifically, the court concluded "[b]ecause Maryland allows for the recovery of non-capped punitive damages upon clear and convincing evidence of actual malice, and New Jersey generally immunizes drug and device manufacturers from punitive damages and limits recovery to $350,000 or five times the compensatory damages award, the laws of New Jersey and Maryland are different, thus necessitating a decision on which law is to be applied." *Id.* at 760–61.

As noted, Oregon does not have a cap on punitive damages, and New Jersey does. Pursuant to *Hill* and *Zimmerman*, the Court concludes there is an actual conflict between Oregon and New Jersey law related to punitive damages. Accordingly,

the Court must perform a conflicts analysis to determine the law that applies to the issue of the availability of punitive damages.

## C. New Jersey law applies.

 As noted, New Jersey applies the "more significant relationship" test to determine the state law that should apply. Defendant cites numerous cases involving Zometa litigation in which courts have held the relevant conduct took place in New Jersey. Those courts recognized there is a presumption that the law of the place of the injury governs, but they concluded Novartis (the defendant in all of the cases cited by Defendant) overcame that presumption because New Jersey has a more significant relationship to the issue of punitive damages than the various plaintiffs' domiciles. Although the cases cited by Defendant involved injuries to plaintiffs that occurred in jurisdictions other than New Jersey, the courts all concluded Zometa's New Jersey business activities, including its interactions with the FDA, formed the foundation of the plaintiffs' claims for punitive damages. *See, e.g., Zimmerman,* 889 F.Supp.2d at 763–64. *See also Brown v. Novartis Pharm. Corp.,* No. 7:08–CV–130–FL, 2012 WL 3066588, at *7 (E.D.N.C. July 27, 2012); *Talley v. Novartis Pharm. Corp.,* No. 08–CV–361–GCM, 2011 WL 2559974, at *4 (W.D.N.C. June 28, 2011)("The record demonstrates that the corporate decisions at issue regarding labeling and packaging, occurred in New Jersey."); *Deutsch v. Novartis Pharm. Corp.,* 723 F.Supp.2d 521, 525–26 (E.D.N.Y.2010)(plaintiffs were unable to set forth any evidence to show the corporate decisions that underlie their punitive-damages claims occurred anywhere other than in Novartis's corporate headquarters in New Jersey); *Meng v. Novartis Pharm. Corp.,* Nos. L7670–07MT, L–6072–08MT, 2009 WL 4623715, at *2 (N.J.Super. Nov.

23, 2009)("Although it is alleged that [Novartis] failed to inform medical providers in [plaintiffs' home states] of certain risks associated with Zometa, ... [p]laintiffs' claims stem from [Novartis's] business activities in New Jersey regarding the marketing, distributing, and selling of Zometa" and Novartis's "interactions with the FDA and the medical and dental community similarly originate[d] from [Novartis's] corporate headquarters in New Jersey.").

In *Zimmerman* the court reasoned:

In determining whether a particular jurisdiction ... has a more significant relationship or stronger interest in the controversy than this state ... courts generally consider the following contacts: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered.[2]

Novartis' contacts weigh in favor of applying New Jersey law. The place where the injury occurred, Maryland, is "simply fortuitous" with respect to punitive damages as "it bears little relation to the occurrence and the parties with respect to the particular issue." Restatement (Second) of Conflicts of Law § 145 cmt. e (1971); *Meng,* 2009 WL 4623715, at *2 (finding in an Aredia and Zometa products liability litigation that the place where the injury occurred is "simply fortuitous" with respect to the punitive damages issue); *Talley,* 2011 WL 2559974, at *3 (same).

The next two factors—*i.e.* the place where the conduct causing injury occurred and the place of business/incorporation—also weigh in favor of applying New Jersey law. Novartis' primary place of business is in New Jersey and the corporate decisions with respect to labeling and packaging of Aredia and Zometa took place in New Jersey.

\* \* \*

The final factor—the place where the relationship, if any, between the parties is centered—also supports application of New Jersey law because Novartis' New Jersey business activities, including its interactions with the FDA, form the foundation of Plaintiff's claim for any punitive damage award. *See Meng,* 2009 WL 4623715, at *4 (holding that the relationship between Novartis and the Aredia and Zometa plaintiffs was centered in New Jersey with respect to any claims for punitive damages); *Talley,* 2011 WL 2559974, at *4 (finding that the relationship between the Novartis and the Aredia and Zometa plaintiffs was centered in New Jersey with respect to punitive damages because "the relevant contacts are those that relate to the alleged conduct giving rise to their claims for punitive damages" and the corporate decisions at issue regarding labeling and packaging, occurred in New Jersey); *Brown* [*v. Novartis Pharm. Corp.*], 2011 WL 6318987, at *3 [ (E.D.N.C. Dec. 16, 2011) ] (same). 889 F.Supp.2d at 761–62.

Although here Plaintiff's injury occurred in Oregon, punitive damages are not intended to compensate one for an injury but rather to deter and to punish bad conduct. Accordingly, the Court must consider factors other than the place where Plaintiff suffered her injury. As the court explained in *Talley,*

[t]he Plaintiff's claim that her lawsuit has significant contacts with North Carolina is beyond dispute. The drugs at issue were sold in North Carolina, the Plaintiff was treated by doctors in North

---

**2.** These are the same factors considered under New Jersey conflicts law.

Carolina and took the drugs in North Carolina. The alleged injury unquestionably occurred in North Carolina. However, ... for purposes of choice of law analysis, the relevant contacts are those that relate to the alleged conduct giving rise to their claims for punitive damages. The record demonstrates that the corporate decisions at issue regarding labeling and packaging, occurred in New Jersey.

\* \* \*

[In addition,] New Jersey has made a policy decision on how to impose punitive damages, and has an interest in its citizens being governed by those provisions. Tennessee, as the original forum state, has an interest in having its choice of law analysis applied here. The Defendant, having its principal place of business in New Jersey, has a justified expectation of being subject to New Jersey law for punitive damages. The justified expectations of the Plaintiff are met as she will be compensated under North Carolina law. The basic policy underlying punitive damages is to punish and deter the Defendant, whose conduct occurred in New Jersey, thus the interests of the tort field are enhanced through consistent application of New Jersey law.

2011 WL 2559974, at *4.

The Court finds the cases cited by Defendant are well-reasoned and persuasive. Here Plaintiff has the same contacts as those set out in *Talley, Deutsch,* and *Meng.* As in those cases, Plaintiff's expectation of compensatory damages will be met because the parties agree Oregon law applies to the issues of liability and compensatory damages. In addition, because Defendant's principal place of business is in New Jersey and New Jersey is the state of Defendant's incorporation, Defendant's expectations of punishment or deterrence for bad acts will be met by the application of New Jersey law.

Accordingly, the Court concludes New Jersey law governs the availability of punitive damages in this matter.

### D. Under New Jersey law Plaintiff may not bring a claim for punitive damages in this matter.

As noted, N.J.S.A. § 2A:58C–5(c) provides:

Punitive damages shall not be awarded if a drug or device or food or food additive which caused the claimant's harm was subject to premarket approval or licensure by the federal Food and Drug Administration under the "Federal Food, Drug, and Cosmetic Act," 52 Stat. 1040, 21 U.S.C. § 301 *et seq.* or the "Public Health Service Act," 58 Stat. 682, 42 U.S.C. § 201 *et seq.* and was approved or licensed; or is generally recognized as safe and effective pursuant to conditions established by the federal Food and Drug Administration and applicable regulations, including packaging and labeling regulations. However, where the product manufacturer knowingly withheld or misrepresented information required to be submitted under the agency's regulations, which information was material and relevant to the harm in question, punitive damages may be awarded.

N.J.S.A. § 2A:58C–5(c).

■ The parties dispute whether the exception [3] to New Jersey's ban on punitive damages in cases involving drugs subject to premarket approval or licensure by the FDA is viable. Defendant contends it is

---

**3.** The exception is the portion of the statute that provides: "However, where the product manufacturer knowingly withheld or misrepresented information required to be submitted under the [FDA's] regulations, which information was material and relevant to the harm in question, punitive damages may be awarded."

not and relies on *McDarby v. Merck & Co.*, 401 N.J.Super. 10, 949 A.2d 223 (2008), to support its position.

In *McDarby* two patients brought claims in New Jersey state court under New Jersey's Product Liability Act (PLA) (N.J.S.A. § 2A:58C–1 *et seq.*) and New Jersey's Consumer Fraud Act (CFA)(N.J.S.A.56:8–1) against the manufacturer of Rofecoxib, a prescription, nonsteroidal, anti-inflammatory drug. The plaintiffs alleged the defendant had inadequately warned of cardiovascular risks from that product. After a jury trial, the court awarded the first patient $15.7 million in compensatory and punitive damages, attorneys' fees, and costs and awarded the second patient $2.27 million consisting of $135 in compensatory damages and the remainder as attorneys' fees and costs. *Id.* at 20, 949 A.2d 223. The defendant appealed relying on the Supreme Court's decision in *Buckman Co. v. Plaintiff's Legal Committee*, 531 U.S. 341, 121 S.Ct. 1012, 148 L.Ed.2d 854 (2001). The defendant alleged, among other things, that the trial judge erred when she allowed the jury to consider punitive damages because that remedy was preempted. *Id.* at 88, 949 A.2d 223. The New Jersey Appellate Division[4] held the exception to the punitive damages ban in § 2A:58C–5(c) is preempted by the Federal Food, Drug, and Cosmetic Act (FDCA), 21 U.S.C. § 301 *et seq.*, and pursuant to the United States Supreme Court decision in *Buckman*. *Id.* at 93–94, 949 A.2d 223. The court concluded, therefore, the exception is not available to avoid New Jersey's

ban on punitive damages in actions involving drugs that have been approved by the FDA. *Id.* In other words, the court found the plaintiff's claim for punitive damages was barred under N.J.S.A. § 2A:58C–5(c) and the exception to the bar was preempted by the FDCA. Accordingly, the court reversed the award of punitive damages.

Plaintiff contends "the current vitality of *McDarby* is questionable" following the United States Supreme Court decision in *Wyeth v. Levine*, 555 U.S. 555, 129 S.Ct. 1187, 173 L.Ed.2d 51 (2009).[5] Although Plaintiff cites a number of cases to support her position, those cases are distinguishable. For example, *Sullivan v. Novartis Pharmaceuticals Corporation* involved "whether [p]laintiff's claim arises under federal law, not whether there is preemption under *Buckman*." 602 F.Supp.2d 527, 535 (D.N.J.2009). Similarly, *Hill v. Novartis Pharmaceutical Corporation* addressed the issue of which state's law would govern punitive damages rather than reaching the issue whether punitive damages were available. No. 1:06–cv–00939–AWI–DLB, 2012 WL 967577 (E.D.Cal. Mar. 21, 2012). *Knipe v. SmithKline Beecham* involved a claim for punitive damages for off-label marketing of a prescription drug, which is not a claim in this case. 583 F.Supp.2d 602, 637 (E.D.Pa. 2008). In addition, the *Knipe* court expressly rejected the plaintiffs' position stating: "Plaintiffs argue that *McDarby* was wrongly decided . . ., [and] the Court rejects this argument." *Id.* at 637 n. 37. *Yocham v. Novartis Pharmaceuticals Corporation* involved a motion to find a Texas

---

**4.** The New Jersey Supreme Court initially accepted review of the decision, but later withdrew its acceptance concluding it was improvidently granted. Thus, the New Jersey Appellate Division decision in *McDarby* continues to be the highest court decision in New Jersey to address the viability of the exception to New Jersey's ban on punitive damages provided for in § 2A:58C–5(c).

**5.** Although Plaintiff does not suggest *Buckman*, the case on which the court relied in *McDarby*, is no longer viable after *Wyeth*, such an argument would be unsuccessful, in any event, because the Supreme Court recently relied on *Buckman* in *Arizona v. United States*, —— U.S. ——, 132 S.Ct. 2492, 2503, 183 L.Ed.2d 351 (2012).

plaintiff's liability claims were preempted based on Texas law and did not address the availability of punitive damages under New Jersey law. 736 F.Supp.2d 875 (D.N.J.2010).

Plaintiff also points to various Zometa litigation decisions that did not involve application of New Jersey law. For example, *Fussman v. Novartis Pharmaceuticals Corporation* involved the application of North Carolina's punitive-damages law. 509 Fed.Appx. 215 (4th Cir.2013). That jurisdiction, unlike New Jersey, does not have a statute that precludes punitive damages in cases involving FDA-approved pharmaceutical products. *Id.,* at 225. The court, therefore, examined the impact of *Wyeth* on North Carolina's common law rather than on New Jersey law. *Id.*

Similarly, in *Forman v. Novartis Pharmaceuticals Corporation* the court concluded the plaintiff could recover punitive damages under New Jersey law because a showing of fraud on the FDA was only one part of what the plaintiff had to prove to make out such a claim. 793 F.Supp.2d 598, 606–08 (E.D.N.Y.2011). In reaching that conclusion, however, the court was obligated to follow the Second Circuit's decision in *Desiano v. Warner–Lambert & Co.,* 467 F.3d 85 (2d Cir.2006), and *Desiano's* narrow interpretation of *Buckman. Id.* The *McDarby* court, however, discussed and distinguished *Desiano.* In any event, *Desiano* is not binding on this Court, other courts have reached conclusions opposite to the *Forman* decision, and there is not any Ninth Circuit case adopting the *Desiano* court's narrow interpretation of *Buckman.* In fact, the court in *Zimmerman* concluded *Forman* was incorrectly decided on the ground that the *Buckman* preemption analysis does not change "simply because, under New Jersey law, this [p]laintiff must prove something in addition to noncompliance with a FDCA disclosure re-

quirement to recover punitive damages" because "fraud on the FDA [is] a 'critical element' of every punitive damages claim [under the New Jersey statute]." 889 F.Supp.2d at 777.

In addition, Defendant points to a number of cases decided after *Wyeth* that have rejected Plaintiff's argument that *McDarby* is no longer viable law, including a decision by the New Jersey state court handling the Zometa mass tort litigation. *See Bessemer v. Novartis Pharm. Corp.,* No. MID–L–1835–08–MT. The *Bessemer* court noted in an April 30, 2010, Order:

> Although *McDarby* was subsequently questioned by the U.S. District Court for the District of New Jersey in *Sullivan v. Novartis Pharmaceuticals Corp.,* 602 F.Supp.2d 527 (D.N.J.2009), *McDarby* remains binding precedent in New Jersey. The *Sullivan* case was decided on March 6, 2009. Two months later on May 7, 2009, after the *Sullivan* opinion was issued, the New Jersey Supreme Court withdrew the petition for certification in *McDarby* as improvidently granted. [*McDarby v. Merck & Co., Inc.*] 200 N.J. 267 [979 A.2d 766] (2009). The judgment below in *McDarby* and the holding that punitive damages under the PLA were federally preempted was left undisturbed.

Def.'s Mem. in Support of Mot. (# 65) to Find that Punitive Damages Are Unavailable, Ex. 2 at 38. In addition, the New Jersey Appellate Division held after *Wyeth* that the plaintiffs could not bring a claim for punitive damages because punitive damages are unavailable under the PLA when a drug has been approved by the FDA and the exception to the bar on punitive damages is preempted by federal law as set out in *McDarby. Cornett v. Johnson & Johnson,* 414 N.J.Super. 365, 405, 998 A.2d 543 (2010).[6] Similarly, the New Jersey Superior Court held after

6. The New Jersey Supreme Court affirmed this portion of the Appellate Division's opin-

*Wyeth* that *McDarby* "is binding on this court." *Irby v. Novartis Pharm. Corp.,* Nos. MID–L–1815–08, 2011 WL 5835414, at *6 (N.J.Super. Nov. 18, 2011).

In *Stanger v. APP Pharmaceuticals, LLC,* the United States District Court for the District of New Jersey reached the same conclusion as the New Jersey state courts after *Wyeth:*

> The general rule under New Jersey Law is that punitive damages cannot be awarded in a products liability action based on an FDA-approved drug product. N.J.S.A. 2A:58C–5(c). While the PLA does provide an exception to this rule "where the product manufacturer knowingly withheld or misrepresented information required to be submitted under the agency's regulations, which information was material and relevant to the harm in question … [,]" N.J.S.A. 2A:58C–5(c), the New Jersey Appellate Division has subsequently held that the exception is preempted by federal law. *McDarby v. Merck & Co., Inc.,* 401 N.J.Super. 10, 87–94, 949 A.2d 223 (App. Div.2008). It is undisputed that Heparin is an FDA-approved drug product; thus, the Court finds that all claims for punitive damages stated in the second amended complaint are dismissed.

No. 09–05166(JAP), 2010 WL 4941451, at *4 (D.N.J. Nov. 30, 2010).

This Court finds the cases cited by Defendant are well-reasoned and the cases relied on by Plaintiff are distinguishable. Thus, the Court concludes the weight of authority in New Jersey courts and in courts interpreting New Jersey law holds *McDarby* is still good law and that plaintiffs, therefore, cannot bring claims for punitive damages when a drug has been approved by the FDA because punitive damages are unavailable under the NJPLA and the exception to the PLA is preempted by federal law.

Accordingly, the Court follows the reasoning of the *McDarby* court and, therefore, concludes Plaintiff may not bring a claim for punitive damages in this matter under the PLA and the exception to the PLA is preempted by the FDCA.

**E. Plaintiff's remaining arguments.**

Plaintiff contends even if the Court concludes the statutory exception to the PLA's bar on punitive damages is preempted, Plaintiff may still recover punitive damages based on the "black-letter law of the Restatement (3d) of Torts and/or New Jersey's general punitive damages statute." The court in *Bessemer,* however, rejected both of these arguments. The plaintiffs in *Bessemer* asserted they, unlike the plaintiffs in *McDarby* and *Buckman,* did not rely solely on a claim that Novartis knowingly withheld or misrepresented information to the FDA. The plaintiffs pointed out that they were also asserting Novartis's failure to warn the dental community about the risk of ONJ constitutes punitive conduct unaffected by the FDA's approval of Zometa or that drug's warnings. The plaintiffs based their argument on the fact that the Restatement (3d) of Torts: Products Liability § 6, imposes a duty to warn the dental community; that this duty to warn is based on the Restatement and New Jersey tort law rather than the PLA; and that this duty to warn is unrelated to FDA approval and, therefore, is not preempted. The *Bessemer* court, however, pointed out that New Jersey courts have not adopted § 6 of the Restatement (3d) of Torts and that the only basis for awarding punitive damages is set out in the PLA. Def.'s Mem. in Support of Mot. (# 65) to Find Punitive Damages Are Unavailable, Ex. 2 at 39. The court concluded because Zometa was approved by the FDA, punitive

ion in *Cornett v. Johnson & Johnson,* 211 N.J. 362, 48 A.3d 1041 (2012).

damages are barred by the PLA and the exception in favor of awarding punitive damages is preempted by the FDCA. *Id.*

Plaintiff also asserts if the Court concludes the exception in § 2A:58C–5(c) is preempted, Plaintiff may still recover punitive damages under New Jersey's general punitive-damages statute. Specifically, Plaintiff contends if the Court finds the exception to the punitive-damages provision in § 2A:58C–5(c) is preempted, then all of § 2A:58C–5(c) must also be preempted and Plaintiff must be allowed to recover punitive damages under New Jersey's general punitive-damages statute (N.J.S.A. § 2A:15–5.9–5.17). Plaintiff relies on N.J.S.A. § 1:1–10, which provides:

> If any ... section of the Revised Statutes ... any provision thereof, shall be declared to be unconstitutional, invalid or inoperative, in whole or in part ... such ... section or provision shall, to the extent that it is not unconstitutional, invalid or inoperative, be enforced and effectuated, and no such determination shall be deemed to invalidate or make ineffectual the remaining ... sections or provisions.

Plaintiff notes New Jersey courts have held pursuant to § 1:1–10 that the entire provision of a statute must fail if leaving a particular part of a provision in a statute while invalidating another part thwarts the legislature's intent. *New Jersey Chapter, Am. Inst. of Planners v. New Jersey*, 48 N.J. 581, 227 A.2d 313 (1967). Thus, Plaintiff contends invalidating the exception to the PLA while leaving the remainder of § 2A:58C–5(c) viable would thwart the legislature's intent. The *Bessemer* court, however, rejected this same argument:

> [T]he remaining provision of N.J.S.A. § 2A:58C–5(c)—that punitive damages are unavailable under the PLA where a drug is approved by the FDA—may be constitutionally enforced so as to comport with the Legislature's intent. Based upon the language of N.J.S.A. § 2A:58C–5(c), it is clear that the New Jersey Legislature intended to bar punitive damages in a failure-to-warn case where the drug was pre-approved by the FDA. The court believes it would be contrary to the intent of the legislature for the court to ignore a drug's approval by the FDA and allow punitive damages where the statute expressly precludes such a claim when the drug at issue was FDA-approved.

Def.'s Mem. in Support of Mot. (# 65) to Find that Punitive Damages Are Unavailable, Ex. 2 at 40. The court, therefore, concluded the plaintiffs' claim for punitive damages was barred.

This Court finds the *Bessemer* court's reasoning to be well-supported and notes Plaintiff did not cite any authority that established a plaintiff may recover punitive damages under New Jersey law based on the Restatement (3d) of Tort's duty to warn, that New Jersey has adopted that provision of the Restatement (3d) of Torts or another means to permit an award of punitive damages in the context of a products-liability action involving a drug that was approved by the FDA, or that it would thwart the New Jersey Legislature's intent if the remainder of § 2A:58C–5(c) was enforced while the exception provided for was preempted.

The Court, therefore, concludes Plaintiff has not established she may assert a claim in this action for punitive damages under New Jersey law. Accordingly, the Court grants Defendant's Motion, applies New Jersey law to the issue of punitive damages, and concludes Plaintiff may not bring a claim for punitive damages in this matter.

## IV. Plaintiff's Complaint.

In Defendant's Motion, in Plaintiff's Response, and at oral argument, the parties

advised the Court that they agree Oregon law applies to the issues of liability and compensatory damages. As noted, however, Plaintiff only asserts claims under New Jersey law in her Complaint. For purposes of clarity of the record and in light of the fact that the parties anticipate filing dispositive motions, the Court directs Plaintiff to file an amended complaint setting out her claims (other than a claim for punitive damages) under Oregon law no later than April 29, 2013. Defendant is directed to file an amended answer no later than May 6, 2013.

## CONCLUSION

For these reasons, the Court **GRANTS** Defendant's Motion (# 65) to Find that Punitive Damages Are Unavailable and/or to Apply New Jersey Law to the Issue of Punitive Damages. The Court **DIRECTS** Plaintiff to file an amended complaint setting our her claims (other than a claim for punitive damages) under Oregon law **no later than April 29, 2013.** Defendant is directed to file an amended answer no later than **May 6, 2013.**

IT IS SO ORDERED.